**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on July 23, 2009, which may be different from its entry on the record.**

**IT IS SO ORDERED.**



**Dated: July 23, 2009**

**Arthur I. Harris
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 07-17342 |
| | ) | |
| JAMES A. MICHALSKI, JR., | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge Arthur I. Harris |

MEMORANDUM OF OPINION[1]

This case is currently before the Court on the debtor's motion seeking civil contempt and injunctive relief stemming from the criminal indictment and ongoing prosecution of the debtor, James A. Michalski, Jr., for allegedly passing bad checks in violation of Ohio Rev. Code § 2913.11. The debtor alleges that the criminal indictment and prosecution constitute impermissible acts to collect a prepetition debt in violation of the automatic stay and/or the debtor's discharge. For the

---

[1] This opinion is not intended for official publication.

reasons that follow, the Court finds that the Lake County Prosecutor's indictment and ongoing prosecution of the debtor, including the possibility of criminal restitution obligations, do not violate the discharge injunction.

## JURISDICTION

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order No. 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 28, 2007, the debtor, James Allen Michalski, Jr., filed a petition under Chapter 7 of the Bankruptcy Code. On February 1, 2008, the debtor received his Chapter 7 discharge. On June 12, 2008, the trustee filed a report of no assets, and on June 16, 2008, the case was closed.

On June 1, 2009, the debtor filed a motion to reopen the case for cause pursuant to 11 U.S.C. § 350. In his motion, the debtor also sought civil contempt and injunctive relief stemming from his criminal indictment by the Lake County Prosecutor for allegedly passing bad checks in violation of Ohio Rev. Code § 2913.11. The debtor alleges that the criminal indictment and ongoing prosecution constitute impermissible acts to collect a prepetition debt in violation

2

of the automatic stay and/or the debtor's discharge. The debtor also represented that the trial in his criminal case was set to begin on June 16, 2009.

On June 9, 2009, this Court heard argument on the debtor's motion and a memorandum in opposition filed by the Lorain County Prosecutor. With the understanding that the criminal trial would not go forward until this Court had ruled on the debtor's motion, the Court adjourned the matter for further argument on June 23, 2009. Ultimately, the debtor and the Lorain County Prosecutor agreed to have the motion decided without an evidentiary hearing based upon the written filings as well as Joint Stipulations of Fact filed on July 6, 2009 (Docket #45).

The Joint Stipulations of Fact read as follows:

1. On December 16, 2006, Debtor issued a check to Michael Sherman in the amount of $500.00, which was returned for insufficient funds.

2. On September 24, 2007, the Madison Village Police Department sent Debtor a ten-day notice to make said check good, which was received September 26, 2007.

3. On June 30, 2007, Debtor issued a check to Jerry Balzas in the amount of $1,000.00, which check was returned for insufficient funds on July 6, 2007.

4. On July 17, 2007, Debtor issued a check to Jerry Balzas in the amount of $1,010.00, which check was returned for insufficient funds.

3

5. On September 20, 2007, Paul R. Malchesky, Esq., Mr. Balzas' attorney, sent Debtor a ten-day notice to make said checks good, which was received on September 24, 2007.

6. On September 28, 2007, Debtor filed a petition for a voluntary Chapter 7 no asset bankruptcy, Case No. 07-17342-aih, and listed Michael Sherman and Jerry Balzas as creditors.

7. On or about October 30, 2007, an affidavit on complaint was filed against the Debtor on behalf of Michael Sherman for the issuance of a bad check with the Painesville, Municipal Court, Case No. 07CRA02563.

8. On or about October 30, 2007, an affidavit on complaint was filed against the Debtor on behalf of Jerry Balzas for the issuance of a bad check [theft] with the Painesville Municipal Court, Case No. 07CRB02566.

9. On or about November 9, 2007, an affidavit on complaint was filed against the Debtor on behalf of Jerry Balzas for the issuance of a bad check [theft] with the Painesville Municipal Court, Case No. 07CRA02617.

10. All of the affidavits on complaint alleged issuance of checks for insufficient funds.

11. On January 29, 2007, a Preliminary Hearing was scheduled in the Painesville Municipal Court on all three cases, which Preliminary Hearing was

waived and all three cases were bound over to the Lake County Court of Common Pleas.

12. On May 30, 2008, under Case Numbers 08CR00082, 08CF00083, and 08CF00084, the Lake County Prosecutor dismissed the three (3) cases that had been bound over from the Painesville Municipal Court.

13. During the pendency of the above-captioned bankruptcy, Jerry Balzas filed a proof of claim on April 30, 2008.

14. Both creditors (Michael Sherman and Jerry Balzas) never filed petitions objecting to the dischargeability of the Debtor.

15. On February 1, 2008, the Debtor was discharged from bankruptcy, with the Final Decree in bankruptcy issued on June 16, 2008.

16. On April 13, 2009, the Debtor was secretly indicted by the Lake County Grand Jury for issuing bad checks to Michael Sherman and Jerry Balzas. The case number arising from this indictment is Lake County Court of Common Pleas, Case No. 09CF000243.

17. Debtor was arraigned in the Lake County Court of Common Pleas on April 30, 2009, regarding all three counts of Passing Bad Checks. In an attempt to resolve the criminal case, Paul H. Hentemann, Esq., attorney for Debtor, offered to have Debtor pay the "bad checks" in exchange for the dismissal of the criminal

case. Assistant Lake County Prosecuting Attorney Charles F. Cichocki turned down Mr. Hentemann's offer.

## DISCUSSION

This case involves the inherent tension between, on the one side, the breathing space and fresh start afforded debtors under the automatic stay and discharge provisions, and, on the other side, the important policy considerations in enforcing our criminal laws, including rehabilitation and punishment.

*The Criminal Exception to the Automatic Stay -- 11 U.S.C. § 362(b)(1)*

In the context of the automatic stay, the provision of 11 U.S.C. § 362(b)(1) appears to provide an absolute exception for "the commencement or continuation of a criminal action or proceeding against the debtor." In drafting this exception to the stay, Congress noted that " '[t]he bankruptcy laws are not a haven for criminal offenders.' " *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 560-561 (1990) (quoting S. Rep. No. 95-989, at 51 (1978)), *overruled statutorily on other grounds*, Criminal Victims Protection Act of 1990, Pub. L. No. 101-581, 104 Stat. 2865 (1990). "Section 362(b)(1) ensures that the automatic stay provision is not construed to bar federal or state prosecution of alleged criminal offenses." *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. at 560-61; *cf. Kelly v. Robinson*, 479 U.S. 36, 43-44 (1986) ("[W]e must consider the

6

language of [11 U.S.C.] §§ 101 and 523 in light of the history of bankruptcy court deference to criminal judgments and in light of the interests of the States in unfettered administration of their criminal justice systems.").

Despite what appears to be an absolute exception, courts have divided into at least two interpretations of the extent of this provision. The first interpretation finds that the exception in paragraph 362(b)(1) is an absolute exception regardless of prosecutorial purpose or bad faith. *See Gruntz v. Los Angeles*, 202 F.3d 1074 (9th Cir. 2000); *Simonini v. Bell* (*In re Simonini*), 69 Fed. Appx. 169 (4th Cir. 2003); *Dovell v. The Guernsey Bank*, 373 B.R. 533 (S.D. Ohio 2007); *Rollins v. Campbell* (*In re Rollins*), 243 B.R. 540 (N.D. Ga. 1997); *In re Caravona*, 347 B.R. 259 (Bankr. N.D. Ohio 2006); *Dennison v. Davis* (*In re Dennison*), 321 B.R. 378 (Bankr. D. Conn. 2005); *Pickett v. Quinn* (*In re Pickett*), 321 B.R. 663 (Bankr. D. Vt. 2005). The second interpretation focuses on the motive behind the criminal prosecution and finds that the exception does not apply when the primary motivation is the collection of a debt. *See Batt v. Am. Rent-All* (*In re Batt*), 322 B.R. 776 (Bankr. N.D. Ohio 2005); *Williamson-Blackmon v. Kimbrell's of Sanford* (*In re Williamson-Blackmon*), 145 B.R. 18 (Bankr. N.D. Ohio 1992).

In the present case, action to initiate criminal proceedings by the complaining creditors, Michael Sherman and Jerry Balzas, began with service of

7

10-day notices of dishonor on the debtor even before the debtor filed his petition under Chapter 7.  By definition, such prepetition conduct cannot constitute a violation of the automatic stay.  Although these actions resulted in the filing of criminal charges against the debtor in October 2007, such charges were dismissed on May 30, 2008, after the debtor received his Chapter 7 discharge.  The current criminal indictment did not occur until April 13, 2009, after the debtor received his discharge, his bankruptcy case was closed, and the automatic stay had terminated. *See* 11 U.S.C. § 362(c)(2) (stay against individual Chapter 7 debtor continues until the earliest of -- (A) the time the case is closed; (B) the time the case is dismissed; or (C) the time a discharge is granted or denied).  Therefore, the current indictment and criminal prosecution cannot constitute a violation of the automatic stay, and will analyzed only in the context of the discharge injunction.

*Debtor's Claim under Section 524 of the Bankruptcy Code*

11 U.S.C. § 524 provides in pertinent part:

> (a) A discharge in a case under this title –
> . . . .
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived. . . .

A debtor may bring civil contempt charges against a party violating the discharge

8

injunction of section 524. *See Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 422-23 (6th Cir. 2000); *Lover v. Rossman & Co.* (*In re Lover*), 337 B.R. 633 (Bankr. N.D. Ohio 2005). "If contempt is established, the injured party may be able to recover damages as a sanction for the contempt." *In re Caravona*, 347 B.R. at 267, *citing Chambers v. Greenpoint Credit* (*In re Chambers*), 324 B.R. 326, 329 (Bankr. N.D. Ohio 2005). In addition, the Sixth Circuit recently held that "a state-court judgment that modifies a bankruptcy court's discharge order is void ab initio under § 524(a)." *Hamilton v. Herr (In re Hamilton)*, 540 F.3d 367, 375 (6th Cir. 2008).

> [S]tate courts are allowed to construe the discharge in bankruptcy, but what they are not allowed to do is construe the discharge incorrectly, because an incorrect application of the discharge order would be equivalent to a modification of the discharge order.

*Id.*

Under Section 524(a) of the Bankruptcy Code, a discharge granted under Section 727 operates as an injunction against any action to collect a debt discharged under Section 727. Section 727(b), however, excepts from discharge those debts deemed nondischargeable under section 523(a), including any debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss."

9

Section 523(a)(7).

Unfortunately for the debtor, the United States Supreme Court has determined that criminal restitution obligations are nondischargeable debts under Section 523(a)(7) of the Bankruptcy Code. *See Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. at 558-59; *Kelly v. Robinson*, 479 U.S. at 53 (finding no Congressional intent to alter the longstanding rule of nondischargeability for criminal restitution obligations ); *id*. at 53 (though restitution is often payable to a nongovernment victim, such punishment is intended to "focus on the State's interests in rehabilitation and punishment, rather than the victim's desire for compensation").

While the circuit courts are divided on the scope of section 523(a)(7)'s exception from discharge as it pertains to criminal restitution orders, *compare Troff v. Utah (In re Troff)*, 488 F.3d 1237 (10th Cir. 2007) (debtor's court-imposed restitution obligation was nondischargeable, even though his payments to the state were forwarded to the victim); *In re Thompson*, 418 F.3d 362 (3d Cir. 2005) (same); *with In re Towers*, 162 F.3d 952 (7th Cir. 1998) (court ordered restitution in criminal case for victims of debtor's fraud fell outside section 523(a)(7) exception and was dischargeable), the Sixth Circuit appears to have adopted a broad view of the exception to discharge contained in section 523(a)(7) in light of

10

the Supreme Court's decision in *Kelly v. Robinson*. *See In re Hollis*, 810 F.2d 106 (1987). Indeed, the Sixth Circuit's decision in *Hollis* strongly suggests, at least in this circuit, that *any* restitution imposed as a condition of a state criminal sentence is nondischargeable under section 523(a)(7).

In *Hollis*, the debtor, Barry Hollis, pleaded guilty to four counts of selling marijuana. As part of the criminal judgment, Hollis was ordered to pay $408.75 in costs as a condition of Hollis's probation. After entry of the criminal judgment, Hollis filed a petition under Chapter 7. The State of Tennessee then sought a determination from the bankruptcy court that Hollis's obligation to pay $408.75 in costs was a nondischargeable debt under 11 U.S.C. § 523(a)(7). The bankruptcy court found that the assessment of costs was pecuniary, and thus did not satisfy section 523(a)(7)'s requirement that the debt not be "compensation for actual pecuniary loss." The district court affirmed. On appeal, the Sixth Circuit reversed. Although the Sixth Circuit acknowledged that the assessment of costs was intended, at least in part, to compensate the State for the expense it had occurred in prosecuting Hollis, and therefore fell outside the 505(a)(7) exception to discharge, the Sixth Circuit ultimately came to a different conclusion as a result of the Supreme Court's decision in *Kelly v. Robinson*.

The Sixth Circuit explained:

11

[I]n this kind of case a court must consider the language of section 523(a)(7) "in light of the history of bankruptcy court deference to criminal judgments and in light of the interests of the States in unfettered administration of their criminal justice systems." Kelly, at ----, 107 S.Ct. at 358, 93 L.Ed.2d at 225. The Supreme Court's consideration of these factors led it to conclude that "§ 523(a)(7) preserves from discharge *any* condition a state criminal court imposes as part of a criminal sentence." *Id.* at ----,107 S.Ct. at 361, 93 L.Ed.2d at 229 (emphasis added). It noted in support of its holding that the criminal justice system operates primarily for the benefit of society as a whole and serves to fulfill the penal goals of the State, and that unlike most debts, a financial obligation imposed as a condition of probation does not arise out of a contractual, statutory, or common law duty, but rather is based on a State's traditional penal obligations and goals. *Id.* at ----,107 S.Ct. at 362, 93 L.Ed.2d at 230; *see also In re Zarzynski*, 771 F.2d 304, 306 (7th Cir.1985) ("what a county expends in a criminal prosecution" does not constitute an expense the county undertook "expecting to create a debtor-creditor relationship").

In light of the Supreme Court's decision in *Kelly*, the issue before us here boils down to whether the state criminal court assessed costs against appellee as part of his criminal sentence. We believe that the answer to that issue is yes. The state criminal court clearly intended the assessment of costs to be a condition of appellee's probation under section 40-21-109. Tenn.Code Ann. § 40-21-109 (1982). An assessment of costs, moreover, appears to be an appropriate condition of probation under this section. *See id.* (the court may place the person "on probation upon such reasonable conditions as it may require"); *id.* § 40-21-101 (a "trial judge may consider the payment of costs ... as a condition of probation"). We believe that section 40-24-105(b) of the Tennessee Code, which provides that costs "shall not be deemed part of the penalty" in a criminal case, and upon which the district court relied in reaching its decision, is displaced in this instance by the more specific provisions of section 40-21-109.

In summary, we believe that the Supreme Court's unequivocal holding in *Kelly* requires us to find that the criminal court's assessment of costs against appellee does not constitute a dischargeable debt. 11 U.S.C. § 523(a)(7).

12

810 F.2d at 108.

Moreover, to the extent that the Sixth Circuit's decision in *Hollis* does not expressly hold that all criminal restitution obligations are nondischargeable, this Court would interpret the Supreme Court's ruling in *Kelly v. Robinson* as having already decided the issue. In *Pennsylvania Dept. of Public Welfare v. Davenport*, the Supreme Court had occasion to explain the decision it issued three years earlier in *Kelly v. Robinson*:

> In *Kelly*, the Court decided that restitution orders fall within 11 U.S.C. § 523(a)(7)'s exception to discharge provision, which protects from discharge any debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss." In reaching that conclusion, the Court necessarily found that such orders are "not compensation for actual pecuniary loss." Rather, "[b]ecause criminal proceedings focus on the State's interests in rehabilitation and punishment," the Court held that "restitution orders imposed in such proceedings operate 'for the benefit of' the State" and not " 'for ... compensation' of the victim." 479 U.S. at 53.

495 U.S. at 558-59. As the Tenth Circuit noted in *Troff*: "[E]ven if we disagreed with the breadth of *Kelly's* holding or its rationale, we are not free to blaze our own trail . . . . Thus, *Kelly* - dicta and all - applies." 488 F.3d at 1241. *See also* 488 F.3d at 1243 (Tymkovich, J., concurring) ("As tempting as it would be to ignore the Supreme Court's interpretation of the text in favor of the actual text, that is not our role at the circuit court level."). Nor is it the role of this Court to second-guess

13

decisions from the Supreme Court or the Sixth Circuit.

Accordingly, the debtor's motion for injunctive and other relief must be denied unless this Court finds that the complainants or the prosecutor's office impermissibly used the criminal prosecution to collect otherwise dischargeable debts, *i.e.*, the debts which would have been satisfied had the debtor's checks not been dishonored for insufficient funds.

In determining whether the ongoing criminal prosecution of the debtor is impermissible as an act to collect an otherwise dischargeable debt, the Court is guided by the Sixth Circuit's decision in *In re Daulton*, 966 F.2d 1025 (6th Cir. 1992). In *Daulton*, the debtor, James Daulton, sought to enjoin the State of Ohio from prosecuting him for his allegedly fraudulent sale of his tobacco crop to avoid payment to his creditors. Since the underlying debts to Daulton's creditors had been discharged in Daulton's bankruptcy, Daulton argued that the criminal prosecution and possible payment of restitution would subvert his bankruptcy discharge. Both the bankruptcy court and the district court found that there was no bad faith or harassment on the part of the prosecutor's office in pursuing the criminal charge. In addition, the district court affirmed the bankruptcy court's order prohibiting the creditors and the prosecutor's office from seeking restitution from Daulton. On appeal, the Sixth Circuit affirmed.

14

The Sixth Circuit noted:

> It is undisputed that the Bankruptcy Code precludes the use of criminal actions to collect debts which have been discharged in bankruptcy. *See In re Brown*, 39 B.R. 820 (M.D.Tenn.1984). *Brown* noted that "a creditor cannot use the criminal process to collect an otherwise dischargeable debt by cloaking it as restitution. [However, the] court [did] not question the legitimacy of any other weapons in the State's punishment arsenal, including fines, imprisonment, or restrictive probation." *Id.* at 829.
>
> The action for which Daulton is charged relates to the alleged fraudulent sale of Daulton's 1988 tobacco crop in his daughter's name to avoid payment to his creditors. Unlike those cases cited by Daulton, the criminal action in this case is not one seeking payment under penalty of incarceration or fine. *E.g., In re Strassman*, 18 B.R. 346 (E.D.Pa.1982); *In re Lake*, 11 B.R. 202 (S.D.Ohio 1981); *In re Penny*, 414 F.Supp. 1113 (W.D.N.C.1976). The mere fact that a debt has been discharged in bankruptcy does not preclude a criminal action from proceeding based on the debtor's alleged criminal conduct in relation to the debt. The state criminal action against Daulton does not seek restitution for the discharged debt and thus does not contravene the judgment of the bankruptcy court.
>
> To the extent that Daulton attempts to offer a non-fraudulent reason for the sale of his tobacco crop to his daughter, we remain unpersuaded. Given our conclusion that the criminal case is not being pursued in bad faith, Daulton's guilt or innocence is an issue to be resolved in that criminal action. Therefore, we reject Daulton's claim in its entirety that the bankruptcy court erred in refusing to enjoin the criminal proceeding.

966 F.2d at 1028.

In the present case, the Court finds that the stipulated facts do not support the conclusion that the criminal case against the debtor is being pursued in bad faith. The Lake County Prosecutor has expressed his interest in prosecuting the

15

debtor even if this Court were to bar the prosecutor from seeking restitution as a result of the debtor's discharge.  As the Sixth Circuit noted in *Daulton*, "The mere fact that a debt has been discharged in bankruptcy does not preclude a criminal action from proceeding based on the debtor's alleged criminal conduct in relation to the debt."  966 F.2d at 1028.  While every prosecution for passing bad checks may be seen as motivated, at least in part, to collect a debt, " '[i]t was not in the contemplation of Congress that the federal bankruptcy power should be employed to pardon a bankrupt from the consequences of a criminal offense.' "  *Kelly v. Robinson*, 479 U.S. at 46 n.6 (quoting *Parker v. United States*, 153 F.2d 66, 71 (1st Cir. 1946)).  In addition, the debtor's indictment by a grand jury is a determination by that body that there is probable cause that the debtor committed the offenses charged.  *See Dovell v. The Guernsey Bank*, 373 B.R. at 538-39.  In short, while the debtor's motion and general allegations are sufficient to justify reopening his bankruptcy case under 11 U.S.C. § 350, *see Caravona*, 347 B.R. 268-69, upon closer examination, the facts as stipulated by the parties, do not support the further relief requested, such as enjoining the ongoing criminal prosecution.

## CONCLUSION

For the reasons stated above, the debtors' motion is denied. The Court finds that the Lake County Prosecutor's indictment and ongoing prosecution of the debtor, including the possibility of criminal restitution obligations, do not violate the discharge injunction.

IT IS SO ORDERED.